UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Karen Cook, ) | Civil Action No.: 8:17-cv-02555-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff Karen Cook ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). The matter is before the Court for review of the Report and Recommendation of United States Magistrate Judge Jacquelyn D. Austin, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) for the District of South Carolina. The Magistrate Judge recommends the Court affirm the Commissioner's decision. [ECF #21]. Plaintiff raises several objections to the Magistrate Judge's recommendation. [ECF #25]. Defendant responded to those objections. [ECF #28].

**Factual Findings and Procedural History**

On October 7, 2013, Plaintiff filed an application for DIB, alleging a disability onset date of March 23, 2013. Plaintiff alleges disability due to osteoporosis. Plaintiff was treated by her primary care doctor, Alfred Moss, M.D. on March 25, 2013 for severe left hip pain with a joint injection. [ECF #10-7, Ex 3F]. An x-ray of her left hip and spine showed degenerative disc changes at the L4-5 and L5-S1 level, as well as scoliosis. [ECF #10-7, Ex. 1F]. At a follow-up evaluation, Dr. Moss diagnosed Plaintiff as having degenerative disc issues of the lumbar spine, scoliosis, and persistent pain in the left

inguinal area. Dr. Moss also suspected a ligament strain in addition to arthritis. [ECF #10-7, Ex 3F].

In April of 2013, Plaintiff was evaluated by Frank F. Phillips, M.D. who noted an antalgic gait, and after reviewing her x-rays, diagnosed Plaintiff with left hip pain and probable tendinitis of the left hip, as well as chronic lower back pain. He encouraged her to use a cane and recommended physical therapy. [ECF #10-7, Ex 2F]. At an evaluation in May, Dr. Phillips ordered an MRI and felt that Plaintiff was unable to work at that time. [ECF #10-7, Ex 2F]. The MRI of her left hip showed superior and inferior showed fractures with surrounding edema, as well as multilevel lumbar spondylosis. [ECF #10-7, Ex 1F]. A bone density scan around this time period shows evidence of osteoporosis. [ECF #10-7, Ex 1F]. In June of 2013, Dr. Phillips again indicated that Plaintiff should remain out of work until mid-July. [ECF #10-7, Ex 2F]. On July 12, 2013, Dr. Phillips evaluated Plaintiff for continued left hip pain and indicated that she did not have the risk capacity to return to work at this point but could do any kind of sedentary work. [ECF #10-7, Ex 2F].

On October 16, 2013, Plaintiff was evaluated by Mayte Sandrin, M.D. and was diagnosed with hypothyroidism, osteoporosis, and fatigue. Dr. Sandrin noted Plaintiff's severe hip pain and corresponding left pelvis fracture. Dr. Sandrin indicated Plaintiff continued to experience debilitating pain and impaired healing due to an inoperable fracture. [ECF #10-7, Ex 6F]. Plaintiff returned to Dr. Phillips in November. Dr. Phillips took a pelvic x-ray which revealed mild lumbar scoliosis, pelvic asymmetry, and a healing fracture on the left. He provided a statement indicating Plaintiff was "unable to work at this time due to severe pain from generalized osteoporosis" and stated she would be unlikely to work again due to her high risk for a fracture. [ECF #10-7, Ex 6F]. Plaintiff was seen in March of 2014 by James P. Behr, M.D. who ordered MRIs after noting that on Plaintiff's x-rays there appeared to be a widening of her "SI" (sacroiliac) joint. [ECF #10-8, Ex 11F]. Plaintiff's MRI showed scoliosis

with degenerative changes at L4-5 and small bulging discs present at L3-4 and L5-S1 joint, as well as an MRI showing degenerative changes of the lower lumbar spine and probable uterine fibroids. ECF #10-8, Ex 11F].

On March 24, 2014, a consultative examination by Larry R. Korn, D.O. resulted in a diagnosis of osteoporosis, status post recent pathological fracture of the left anterior pelvis, as well as a history of scoliosis and low back pain. While he indicated recent MRI reports would be important for a disability evaluation, he noted that he obtained very little useful information at this examination due to Plaintiff's subjective pain resulting in limited demonstration. [ECF #10-7, Ex 10F]. On April 30, 2014, a state medical consultant opined that Plaintiff was capable of performing light work with postural limitations. [ECF #10-3, Ex. 1A]. Another state medical consultant opined that Plaintiff was capable of performing sedentary work with postural and environmental limitations on July 11, 2014. [ECF #10-3, Ex. 4A].

At a follow up visit with Dr. Phillips, he indicated that Plaintiff could engage in "at most" sedentary work and based that opinion off of Plainitff's radiologic evidence of stress fractures and osteoporosis diagnosed with a DEXA scan. [ECF #10-8, Ex. 14F]. A month later, Dr. Sandrin noted that Plaintiff was uninsured and had missed two months of medication. In late 2014 and early 2015, Dr. Behr also noted Plaintiff's issues with attempting to obtain insurance. Plaintiff's issues with hip pain, back pain and elevated blood pressure continued through 2015. In early 2016, Dr. Behr again noted in his evaluation of Plaintiff that she had been unable to obtain a recommended EMG due to costs. Dr. Behr noted that Plaintiff's hip examination was positive on the left, and that he would hold off on an EMG for further evaluation of Plaintiff's lower extremity weakness.

On May 31, 2016, Dr. Behr provided a statement indicating that he had seen Plaintiff every 1-3

3

months since 2014 for treatment of back pain, and pain in the SI joint, pelvis, and shoulder. He observed post-laminectomy syndrome, as well as chronic pain due to several pelvic fractures. He indicated that despite treatment, Plaintiff continued to report significant bouts of pain and significant functional limitations. Dr. Behr reported his examination was consistent with those complaints. He opined Plaintiff was limited to no more than sedentary work, with that being defined as being able to stand or walk no more than 2 hours total out of an eight hour workday, that she could lift no more than ten pounds occasionally and nothing more than light objects frequently. He also explained that consistent with her condition, she would be uncomfortable in a seated position and have pain if she were to sit in excess of six hours out of an eight hour workday. He further opined that even with a sedentary job, Plaintiff could experience interruptions in concentration, sufficient to frequently interrupt tasks throughout the day. Dr. Behr limited his assessment to Plaintiff's back and hip problems and indicated he found her credible and compliant with treatment. [ECF #10-9, Ex. 20F].

Plaintiff received an unfavorable decision from the ALJ on November 1, 2016, finding Plaintiff was not disabled as defined by the Act. The Appeals Council denied her request for review of that decision on September 1, 2017, making the ALJ's decision the final decision by the Commissioner. In requesting review, Plaintiff submitted additional evidence to the Appeals Council. The Appeals Council determined that the additional evidence was not relevant to the period in question and therefore did not affect the determination of disability. The medical evidence submitted to the Appeals Council included an evaluation by Dr. Alfred R. Moss on December 9, 2016, which included an EMG and nerve conduction study. Dr. Moss diagnosed Plaintiff with neuropathy, leg pain, and bilateral foot pain. Dr. Moss also completed a questionnaire on December 16, 2016, wherein he indicated that on a five day a week, 8 hour day, Plaintiff could not engage in anything more than sedentary work. Dr. Moss further

noted that if Plaintiff attempted to work this type of weekly shift, it was most probable she would have to rest away from the work station for more than an hour during the work day.

In the decision determining Plaintiff was not disabled, the ALJ's findings were as follows:

> (1) The claimant last met the insured status requirements of the Social Security Act through June 30, 2018.
>
> (2) The claimant has not engaged in substantial gainful activity since March 23, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> (3) The claimant has the following severe impairments: hypothyroidism, osteoporosis, degenerative disc disease of the lumbar spine status post back surgery, and a left shoulder disorder (20 CFR 404.1520(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> (5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except she can lift and carry 10 pounds occasionally and frequently. She can stand two hours out of an eight-hour workday, walk two hours out of an eight-hour workday, and sit six hours out of an eight-hour workday. She can occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to hazards.
>
> (6) The claimant is capable of performing past relevant work as a tax preparer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> (7) The claimant has not been under a disability, as defined in the Social Security Act, from March 23, 2013, through the date of this decision (20 CFR 404.1520(f)).

[ECF #10-2, pp. 14-22].

Plaintiff requested a review of the ALJ's decision. The Appeals Council denied Plaintiff's request to review the ALJ's decision, making the decision of the ALJ the final decision of the Commissioner. In making that decision, the Appeals Council indicated that it considered the reasons Plaintiff disagreed with the ALJ's decision. On September 22, 2017, Plaintiff filed a complaint seeking judicial review of the Commissioner's decision. [ECF #1]. Both Plaintiff and Defendant filed briefs [ECF #16; ECF #18; ECF #19], and the Magistrate Judge issued her Report and Recommendation on October 19, 2018, recommending that the Commissioner's decision be affirmed. [ECF #21]. The Magistrate Judge recommends affirming the Commissioner's decision because the record contains substantial evidence to support the decision that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. [ECF #21]. Plaintiff filed objections on November 12, 2018. [ECF #25]. Defendant replied to these objections on November 20, 2018. [ECF # 28].

## Standard of Review

I. **Judicial Review of the Commissioner's Findings**

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the

6

Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## II.    The Court's Review of the Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the Report and Recommendation ("R & R") to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court

7

need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

## **Applicable Law**

Under the Act, Plaintiff's eligibility for the sought-after benefits hinges on whether she is under a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The claimant bears the ultimate burden to prove disability. *Preston v. Heckler*, 769 F.2d 988, 991 n.\* (4th Cir. 1985). The claimant may establish a prima facie case of disability based solely upon medical evidence by demonstrating that her impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P of Part 404 of Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a prima facie case of disability by proving she could not perform her customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664, 666-68 (4th Cir. 1975). This approach is premised on the claimant's inability to resolve the question solely on medical considerations, and it is therefore necessary to consider the medical evidence in conjunction with certain vocational factors. 20 C.F.R. §§ 404.1560(a) & § 416.960(a). These factors include the claimant's (1) residual functional capacity, (2) age, (3) education, (4) work experience, and (5) the existence of work "in significant numbers in the national economy" that the individual can perform. *Id.* §§ 404.1560(a), 404.1563, 404.1564, 404.1565, 404.1566, 416.960(a), 416.963, 416.964, 416.965, & 416.966. If an assessment of the claimant's residual functional capacity leads to the conclusion that she can no longer perform her

8

previous work, it then becomes necessary to determine whether the claimant can perform some other type of work, taking into account remaining vocational factors. *Id.* §§ 404.1560(c)(1) & 416.960(c)(1). Appendix 2 of Subpart P governs the interrelation between these vocational factors.

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing past relevant work;[2] and (5) whether the impairment prevents her from doing substantial gainful activity. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to past relevant work

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish her impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

9

as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). Once an individual has made a prima facie showing of disability by establishing the inability to return to past relevant work, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a vocational expert demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to past relevant work. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

## Analysis

### A. Past Relevant Work

First, Plaintiff objects to the Magistrate Judge's finding that the ALJ adequately determined that Plaintiff could perform her past relevant work. Plaintiff argues that the ALJ improperly relied upon the vocational expert's testimony because the vocational expert's description of her past relevant work (that of a tax preparer) and the Dictionary of Occupational Titles ("DOT") job definition were different. Plaintiff contends that the DOT job definition of a tax preparer is significantly different than Plaintiff's own description of her job, which she states fell outside the parameters of the RFC determination by the ALJ.

Step four of the sequential evaluation in making a disability determination addresses a

10

claimant's past relevant work. The regulations concerning past relevant work focus on the functional capacity retained by a claimant. The regulations provide that if a claimant retains the residual functional capacity to perform past relevant work, then a determination that a claimant can still perform past work and is therefore not disabled is appropriate. 20 C.F.R. § 404.1560(b)(3). There are three ways to determine whether a claimant retains the capacity to perform past relevant work: (1) can the claimant perform the past relevant work based on a "broad generic occupational classification" of that job; (2) does the claimant "retain the capacity to perform the particular functional demands and duties peculiar to an individual job" as that job was actually performed; or (3) can the claimant perform the functional demands and duties of the job "as ordinarily required by employers throughout the national economy." SSR 82-61,1982 WL 31387 (1982). Thus, an ALJ may find a claimant could perform her past relevant work as it was generally performed or as it was actually performed to make a determination that the claimant is not disabled. Plaintiff must show that she cannot perform her past relevant work. *See DeLoatche v. Heckler*, 715 F.2d 148, 151 (4th Cir. 1983).

While Plaintiff argues that the ALJ should have reconciled the fact that the DOT job definition of a tax preparer with the work as she actually performed it, the record does not support a finding that this has any bearing upon the ALJ's decision. First, the ALJ heard testimony from Plaintiff as to what she believed her job duties entailed. Second, the ALJ determined that Plaintiff could perform her past relevant work as a tax preparer, based at least in part on the vocational expert's testimony. The vocational expert testified, after hearing Plaintiff's testimony about her past work, that she could perform her past relevant work as a tax preparer *as actually performed or as generally performed*. [ECF #10-2, p. 62-63]. Still, Plaintiff continues to assert that the DOT description describes work that is more complex than she could actually perform. The DOT description is the "maximum" requirements

11

of a particular job. Here, the ALJ gave the vocational expert the hypothetical person fitting Plaintiff's work history and education, along with the same RFC as assessed by Plaintiff, including the fact the capacity to lift ten pounds occasionally and ten pounds frequently. The vocational expert testified that Plaintiff could "go back" to her work as a tax preparer. Plaintiff fails to provide any cogent explanation as to why this alleged discrepancy between the DOT job description and Plaintiff's employment is relevant, and even it if were, she fails to explain how the vocational expert's testimony that she could go back to her previous position as a tax preparer does not provide adequate support for the ALJ's findings. This Court agrees with the Magistrate Judge that the ALJ's determination that Plaintiff could perform her past work as a tax preparer is supported by substantial evidence. Therefore, this objection is overruled.

**II. Reaching Limitations in the RFC**

Plaintiff next objects to the recommendation within the R&R that substantial evidence supports the ALJ's determination that the lifting and carrying restriction provided for in the RFC sufficiently accounted for Plaintiff's shoulder impairment. Plaintiff contends that the ALJ did not adequately consider Plaintiff's inability to afford testing and treatment for her left shoulder condition; thus, it was unreasonable to reject her allegations of pain and her reaching limitations. Social Security Ruling 96-8p explains how adjudicators should assess a claimant's residual functional capacity ("RFC"). SSR 96-8p, 1996 WL 374184 (July 2, 1996). First, an ALJ must identify the individual's functional limitations or restrictions and assess work-related abilities on a function-by-function basis. SSR 96-8p. The ALJ must also determine how an individual's limitations or impairments affect his ability to meet the physical and mental demands of work on a regular and continuing basis. SSR 96-8p. In Social Security Ruling 16-3p, the Social Security Administration explains that the intensity and persistence of a claimant's

12

symptoms should be evaluated to determine whether these symptoms limit the ability to perform work-related activities.[3] In evaluating a claimant's subjective symptoms, an ALJ must follows a two-step process: (1) determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms; and (2) evaluate the intensity and persistence of a claimant's symptoms to determine the extent to which they limit the claimant's ability to perform work-related activities. SSR 16-3p; *see Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996) (explaining the two-step process in determining whether a person is disabled by pain or other symptoms). A claimant may not be penalized for failing to seek treatment she cannot afford. *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986).

Here, Plaintiff contends that the ALJ relied on a lack of objective testing, which she could not afford, to determine that Plaintiff's shoulder limitation was not disabling. A review of the decision shows that the ALJ provided a detailed discussion of Plaintiff's shoulder impairment. The ALJ determined that the left shoulder disorder was a severe impairment. While the ALJ further indicates that Plaintiff does not have any x-rays to support her contention that her shoulder condition is disabling, the ALJ nonetheless accounted for this impairment within the RFC by including a lifting and carrying restriction. The ALJ further noted that Plaintiff's daily activities support the ability to use her upper extremities, specifically noting that she can still independently care for her own self-care and hygiene, as well as engage in a variety of household chores. The ALJ next considers relevant the fact that Plaintiff makes floral bouquets approximately ten hours a month as a hobby. Finally, the ALJ explained within the decision that her pain is reportedly treated with medication. In other words, while the ALJ did indicate the lack of objective evidence, the ALJ provided other reasons for not fully accepting

---

[3]SSR 96-7p was rescinded and superceded by SSR 16-3p, which became effective on March 28, 2016.

Plaintiff's allegations of pain as it relates to her shoulder impairment. The record also reveals that in at least one record that while Plaintiff was self-pay and was therefore holding off on certain procedures, she was still receiving medical treatment. Thus, this Court agrees with the Magistrate Judge that substantial evidence supports the ALJ's determination that the shoulder impairment is not disabling and that the lifting and carrying restriction adequately accounts for Plaintiff's allegations of pain in her shoulder.

### III. Appeals Council's Rejection of Evidence

Plaintiff objects to the Magistrate Judge's recommendation that the Appeals Council was not required to consider the additional evidence produced by Plaintiff. Plaintiff's hearing before the ALJ was held on August 26, 2016. On November 1, 2016, the ALJ determined that Plaintiff was not disabled. Thereafter, Plaintiff sought to submit medical evidence to the Appeals Council dated approximately one month after the date of the ALJ's decision. The medical records in question indicate that Plaintiff was sent by her attorney to obtain a nerve conduction velocity study (NCV). [ECF #16-1]. The medical records also include a questionnaire with five questions to be answered by Dr. A.R. Moss. Within the questionnaire, Dr. Moss indicates that Plaintiff was so impaired from December 9, 2016 forward. [ECF #16-2]. It is Plaintiff's contention that despite the fact that Dr. Moss's medical opinion does not concern the period in question, it should have been considered as relevant to Plaintiff's condition during the time period in question. Defendant responds that Plaintiff's medical records indicate her doctors recommended she obtain similar testing approximately ten months before the ALJ's hearing decision, but she did not undergo this testing until a month after obtaining an unfavorable result from the ALJ. Defendant also argues that Plaintiff's own attorney stated at her hearing that the record was complete. Defendant further argues that Plaintiff cannot seek to generate new evidence simply to

14

prove disability. *See generally Koulizo v. Secretary of Health & Human Servs.*, 802 F.2d 458 (6th Cir. 1986).

If a claimant submits evidence to the Appeals Council for review that is *new, material, and relates to the period on or before the ALJ's decision*, the Appeals Council must consider the newly submitted evidence. *Wilkins v. Dep't. of Health & Human Servs.*, 953 F.2d 93, 95-96 (4th Cir. 1991) (emphasis added). "New" evidence is evidence that is not duplicative or cumulative. *Wilkins*, 953 F.2d at 96 (citing *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990)). Evidence is material if there is a reasonable probability that the new evidence would change the outcome of the decision. *Wilkins*, 953 F.2d at 96. However, additional evidence showing a deterioration in claimant's previously non-disabling condition after the date of the Commissioner's decision does not provide a basis for remand. *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997). The new evidence must pertain to the time period in question and not concern later-acquired disabilities. *Id.* Rather, it may create grounds for a new application of benefits if the evidence shows deterioration of a condition. *Id.*; *see also Jackson v. Colvin*, No. 5:12-00686-KDW, 2013 WL 4056336 (D.S.C. Aug. 12, 2013) (citing *Jones* for support that additional evidence showing a deterioration of condition is not grounds for remand).

In reviewing the evidence that the Appeals Council chose not to include as new evidence because it does not relate to the period in issue, this Court finds it relevant that Dr. Moss assesses Plaintiff as having neuropathy, in addition to leg pain and foot pain. Plaintiff did not allege at the hearing or in her disability documents that she suffered from issues related to neuropathy, or otherwise indicated that she previously had this diagnosis. Instead, Plaintiff points to her orthopedic medical records, reflecting complaints of lower extremity weakness and pain. However, these notes generally relate to her osteoporosis diagnosis, and issues such as bulging discs and pain associated with those

15

impairments. The evidence Plaintiff now seeks to submit is related to what appears to be a diagnosis of neuropathy, which appears distinct from the impairments that were before the ALJ for the time period in question. More importantly, it is clear from the records that Plaintiff's physician indicated within the December 16, 2016 questionnaire answers that the impairment began on December 9, 2016. Thus, this Court does not find error in the Appeals Council's determination that it would not consider this evidence, as it does not appear to relate to the time period in question. This objection is therefore overruled.

### Conclusion

The Court has thoroughly reviewed the entire record as a whole, including the administrative transcript, the briefs, the Magistrate Judge's R & R, Plaintiff's objections to the R & R, Defendant's response to Plaintiff's objections, and the applicable law. For the foregoing reasons, the Court adopts the recommendation of the Magistrate Judge. [ECF #21]. The decision of the Commissioner is affirmed.

**IT IS SO ORDERED.**

Florence, South Carolina  s/ R. Bryan Harwell
March 26, 2019  R. Bryan Harwell
  United States District Judge